THE BANK OF ALEXANDRIA, PLAINTIFF IN ERROR, *vs.* EDWARD AND FRANCIS DYER, DEFENDANTS IN ERROR.

An action was instituted by the Bank of Alexandria, in the county of Alexandria, against the defendants, residents in the county of Washington, in the same district, for money loaned. The suit was brought in the county of Washington. The defendants pleaded the statute of limitations of Maryland, which prevails in that part of the District of Columbia, and which limits such actions to three years, from the date of the contract. The plaintiff replied, that he was "beyond seas;" claiming the benefit of the exception in the statute in favour of persons "beyond seas."

The words "beyond seas," in the statute of limitations of Maryland, are manifestly borrowed from the English statute of limitations of James I., ch. 21; and it has always been held, that they ought not to be interpreted according to their literal meaning; but ought to be construed as equivalent to the words, "without the jurisdiction of the state" According to this interpretation, a person residing in another state of the Union as "beyond seas," within the meaning of the act of Assembly; and therefore excepted from its operation, until he should come within the limits of Maryland. This statute is in force in Washington county, in the District of Columbia, and this Court will give it the same construction it has received in the Courts of Maryland.

The county of Alexandria, in the District of Columbia, cannot be regarded as standing in the same relation to the county of Washington that the states of this Union stand in relation to one another.

The counties of Washington and Alexandria together constitute the territory of Columbia, and are united under one territorial government. They have been formed by the acts of Congress into one separate political community; and the counties which constitute it resemble different counties in the same state; and do not stand towards one another in the relations of distinct and separate governments. Residents of the county of Alexandria were not "beyond seas" in respect to the county of Washington.

IN error to the Circuit Court of the United States for the county of Washington, in the District of Columbia.

On the 26th of October, 1835, the plaintiff in error instituted a suit in the Circuit Court of the United States for the County of Washington, in the District of Columbia, against the defendants, for the sum of two thousand five hundred dollars, by them, the plaintiffs, before that time, in Alexandria, in the District of Columbia, lent and advanced to the defendants, at their special instance and request.

The defendants pleaded the statute of limitations of the state of Maryland, which limits actions of this nature to three years. To this plea the plaintiff replied, that at the time of making of the promise alleged against the defendants, they, the said plaintiffs, were in the county of Alexandria, in the District of Columbia, beyond the seas; and so continued until the day of the impetration of the original writ in this action.

The defendants demurred to this replication, and the Circuit Court gave judgment for the defendants. The plaintiffs prosecuted this writ of error.

[The Bank of Alexandria vs. Dyer.]

The case was argued by Mr. Coxe, for the plaintiffs in error ; and by Mr. Brent and Mr. Jones, for the defendants.

Mr. Coxe said : The defendants rely on the statute of limitations of Maryland, which restrains actions of the description of that before the Court to three years. The plaintiffs pleaded, that they were in the state of Virginia, and beyond " seas ;" and therefore not within the provisions of the statute of Maryland.

The laws of Maryland prevail on this side of the river Potomac, and govern in all cases arising within that part of the District of Columbia which was ceded by the state of Maryland to the United States. The second section of the act of the Assembly of Maryland, passed in 1815, limits actions on simple contract to three years. This limitation is to actions within the province now state of Maryland. The plaintiff never was in the state of Maryland, or in the county of Washington. Those " beyond seas" are excepted from the operation of the statute ; and the question is, whether the plaintiffs are within the statute.

In Alexandria, on the south side of the Potomac, another limitation law prevails. The limitation by that law is five years. 1 Revised Code of Virginia, 488.

The act of Congress of 27th February, 1801, declares, that the laws of the state to which the ceded territory had belonged, shall be the laws in the part of the District ceded by the state.

The terms " beyond seas," mean beyond the limits of the state of Maryland, and out of the jurisdiction of the Courts of the state ; until 1801, therefore, the replication of the defendant would have been sufficient. The single question in the case is, then, whether, the counties in the District of Columbia on both sides of the Potomac river, having been ceded to the United States, the county of Washington is now, as to the part of the District ceded by Virginia, " beyond seas."

The parts of the District separated by the river have been treated, as to the importation of slaves from the county of Alexandria into the county of Washington, as altogether foreign to each other. This has been remedied by special enactments ; but such enactments were necessary to change these relations. Act of Maryland, 1802. Act of Congress, 1812.

In other particulars, the two counties have been held to be distinct. As to the acknowledgment of deeds, a deed acknowledged according to the provisions of the law of Maryland, cannot be admitted of record in the county of Alexandria ; and the same rule applies to deeds acknowledged under the Virginia laws, intended to convey lands in the county of Washington. There has been a uniform recognition of the principle, that those parts of the District continued to be distinct communities, by Virginia, Maryland, and the United States.

It is now contended they are the same community, because they are under the same government. This is not altogether true. Mary-

[The Bank of Alexandria vs. Dyer.]

land was not a party to the cession by Virginia, nor was Virginia to the cession by Maryland. If the position be maintained, that because the states of the Union have the same government, they are the same community, the exceptions in the statutes of limitations of one state cannot be pleaded to actions brought against citizens of the United States. Circuit Courts of the United States are held by the judges of the Supreme Court in all the states. The states are thus to each other, what the county of Washington is to the county of Alexandria.

An attempt will be made to show, that under the statute of James, "beyond seas" did not apply to Scotland. That the county of Washington stands in the same relation to the county of Alexandria, that Scotland did to England. But the statute of Henry VIII. made the exception in favour of persons " beyond the realm," and this was altered by the statute of James, to " beyond seas." This was considered as fixing the interpretation in favour of Scotland, so as to prevent the exception being applied. Ireland has always been held to be "beyond seas;" under the exception in the English statute of limitations.

It is denied that the adoption of the legislation of the states, of which the District of Columbia is a part, is to be considered as the legislation of Congress. The laws existing before cession, continued after the cession was made. The people of the ceded territory continued to enjoy the same laws which prevailed before. This principle has been settled by the laws of nations, and by the decisions of this Court.

But if there is any inconvenience in the application of the principles contended for by the plaintiff in error, Congress may afford a remedy. Congress has interposed in other cases. Real property has been made equally liable to debts, in all parts of the district. So the powers of the Orphans Court have been made the same throughout the counties of Alexandria and Washington.

As to the legislation of Congress relative to slaves, cited, Lee vs. Lee, 8 Peters, 49.

Mr. Jones and Mr. Brent considered the laws prevailing in the District, as flowing from the same fountain. The sovereignty is the same; and the law stands as if Congress had enacted that the limitation of actions of this kind should be three years in the county of Washington, and five years in the county of Alexandria. Thus considered, there is no ground for the exception. The whole District is one political body.

How has the question as to the operation of the statutes of limitations been settled? It has been held, that the limitation of actions is a part of the lex fori, and does not affect the contract. They leave it to be enforced elsewhere, according to the laws of the place; and only prevent the remedy, when the party who claims the application of the law is within its provisions. He who claims the advantage of an exception must bring himself strictly within it.

Angel on Limitations, 218. King vs. Walker, 1 William Black Rep. 286.

The Courts of the United States have decided, that the states of the Union are, to a certain extent, foreign to each other. They are so, because of their being separate and distinct governments; and it has, therefore, been properly held, that the exception in the statutes of limitations, in favour of persons "beyond seas," may be well applied to citizens of different states. But the counties of the District of Columbia are under one government; are one community; and as in the case of Scotland, under the statute of James, the exception has no application. Murray's Lessee vs. Baker et al., 8 Wheat. 541. 4 Cond. Rep. 320. Shelley vs. Jay, 11 Wheat. 361. 6 Cond. Rep. 345. 1 Johns. Cases, 8. 2 M'Cord's S. C. Rep. 231. 1 Harr. and Johns. Rep. 352.

[Mr. Justice CATRON inquired if the Bank of Alexandria was not incorporated by Congress. This would make it a corporation of the District. Mr. Brent said it was so incorporated.]

The inconveniences attending the construction of the statute of limitations, contended for by the counsel for the plaintiff in error, would be very great; and the Court would consider arguments ab inconvenienti in such a case, as of great force. If by a broad construction of the statute they can avoid the inconvenience, they will do so.

As to the general question, it is contended, that the act of Congress authorizing the exclusive legislation of Congress over the District of Columbia, looked to the establishment of a single government. This was the object and purpose of the United States, as are shown by acts of Congress, and the acts of cession.

The question of the identity of the whole District was discussed in the case of Hepburn et al. vs. Ellzey, 2 Cranch, 445.

It was then decided, that the District was a state, but not a state of the Union, within the Constitution and the laws of Congress. It was held to be a general body politic; but only not constitutionally a state. The case of Scotland is a strong illustration of the principle contended for by the defendants. Scotland was a separate kingdom; but it was not held to be beyond sea, as to England.

The Court are asked to give a sensible and a practical interpretation of the act of limitations. They have done this in relation to limitation laws of states, and the same should be done in this case; all that is required is, that the person who claims the benefit of the exception shall have been out of the state. Is a strained construction of the statute, to affect the obvious interpretation of it?

There has been legislation by Congress on one point which presents a strong illustration of the principle claimed by the defendants. The act establishing a Circuit Court in the District of Columbia, gives jurisdiction in cases between citizens of the District. This was held to limit the jurisdiction to persons found within, or resident in the District. To be personally resident within one of the counties of the District. This shows that by adopting a different

[The Bank of Alexandria vs. Dyer.]

code for each side of the Potomac, they did not intend to make the Courts separate. Always, when Congress intends to provide for any thing like original legislation, they make the provisions of the laws applicable to the District generally. They provide for jurisdiction of the Circuit Court over the whole District.

Mr. Chief Justice TANEY delivered the opinion of the Court.

This case arises upon an action of assumpsit, brought by the plaintiffs in error, against the defendants, in the Circuit Court of the United States, for Washington county, in the District of Columbia. The declaration contains the usual money counts, to which the defendants pleaded the statute of limitations. The plaintiffs replied, that they ought not to be precluded from having their action, because at the time of making the promise, they (the plaintiffs) "were in the county of Alexandria, in the District of Columbia, beyond the seas;" and so in the county of Alexandria, beyond the seas, remained until the bringing of this action. To this replication, the defendants demurred. The plaintiffs joined in demurrer; and the Circuit Court gave judgment for the defendants.

The question presented by these pleadings, is the construction of that clause in the Maryland act of limitations, which exempts from the operation of the act all persons who are "beyond the seas," at the time cause of action accrues, and continues the exemption until they shall return. The words, "beyond the seas," in this law, are manifestly borrowed from the English statute of limitation of James I. ch. 21; and it has always been held, that they ought not to be interpreted according to their literal meaning, but ought to be construed as equivalent to the words, "without the jurisdiction of the state." According to this interpretation, a person residing in any other state of the Union was "beyond the seas," within the meaning of this act of assembly; and therefore, excepted from its operation until he should come within the limits of Maryland.

This statute is in force in Washington county, in this District, where the present action was brought; having been adopted for that county by the act of Congress of February 27th, 1801, together with the other laws of Maryland, as they then existed. And having been thus adopted, the Court will, of course, give to it the construction which it has uniformly received in the Courts of Maryland.

But the county of Alexandria, in this District, cannot be regarded as standing in the same relation to the county of Washington, that the states of this Union stand in relation to one another. When this act of limitation was passed, (1715, ch. 23,) no doubt a person in Alexandria was "beyond the seas" in relation to Maryland, in the sense in which these words are used in the law in question. But it is equally certain, that if the county of Alexandria had afterwards been ceded to Maryland, and been incorporated with it, as a part of the same political body, the inhabitants of that county

would no longer have been within the saving of this proviso; and the act of limitations would have operated directly upon them. The same principles must apply, when the county of Alexandria has become united with a portion of Maryland, in which this act of limitation is in force, and forms with such portion one political community, united under one government. Such is now the condition of the counties of Washington and Alexandria, which together constitute the territory of Columbia, and are united under one territorial government. They have been formed by the acts of Congress into one separate political community; and the two counties which compose it, resemble different counties in the same state, and do not stand towards one another in the relation of distinct and separate governments. The plaintiffs, therefore, were not "beyond the seas," in respect to the county of Washington; and the judgment of the Circuit Court must be affirmed.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this Court, that the judgment of the said Circuit Court, in this cause be, and the same is hereby affirmed, with costs.